OLD COLONY INS. CO. v. STARR-MAYFIELD CO.

(Court of Civil Appeals of Texas. Jan. 26, 1911. Rehearing Denied March 16, 1911.)

INSURANCE (§ 376*) — WAIVER OF CLAUSES — EFFECT.

Agreement by fire insurer's agent, who was empowered to solicit, issue, and deliver policies, in negotiating for a policy, that an iron-safe clause should not apply, binds insurer, where insured, when the contract was made, had no notice of limitation upon the agent's authority, though the policy stipulated against his right to waive provisions, and where, when insured accepted the policy, he did not know that the policy differed from the terms agreed upon.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 952–955; Dec. Dig. § 376.*]

Appeal from Smith County Court; J. A. Bulloch, Judge.

Action by the Starr-Mayfield Company against the Old Colony Insurance Company. From a judgment for plaintiff, defendant appeals. Affirmed in oral opinion. Motions for rehearing and to certify overruled.

Crane & Crane, for appellant. Price & Beaird, for appellee.

WILLSON, C. J. As the assignee of one Brown, appellee, the plaintiff below, recovered a judgment against appellant for the sum of $800, the amount of a policy issued by appellant to Brown, insuring a stock of merchandise owned by him against loss by fire, which stock, during the life of the policy, was destroyed by fire. The policy was dated October 20, 1909. It contained the usual "iron-safe clause," requirements of which, it was shown, had been ignored by Brown. Having reached the conclusion that said clause in the policy was not operative as between the parties to the contract, in an oral opinion rendered January 26, 1911, we affirmed the judgment of the court below. In motions for a rehearing and to certify a question to the Supreme Court, it is insisted, among other things, that the conclusion reached by us is in conflict with the conclusion reached by the Court of Civil Appeals of the Fourth District in Insurance Co. v. Mize, 34 S. W. 670.

This contention is based upon the assumption, and it is a correct one, that this court held that, notwithstanding the stipulation in the policy to the contrary, appellant was bound by the conduct of its agent, McBride; whereas the Court of Civil Appeals of the Fourth District in the Mize Case held that, where the policy expressly prohibits an agent from waiving such a term in the policy, the insurance company is not bound by his act. We were, and are still, of the opinion that this case on its facts is clearly distinguishable from the Mize Case, and that there is no conflict between the conclusion reached by us and that reached by said Court of Civil Appeals of the Fourth District. In the Mize Case it was shown that at the time the policy was tendered to the insured the company's agent told him that it was not necessary to comply with the requirements of the iron-safe clause, and that the insured afterwards read that clause in the policy and then accepted the policy. In this case Brown, the insured, testified: "He [McBride, appellant's agent] came into my place of business and solicited me to take out insurance with his company, on my stock. * * * I told him that I could not keep my books in an iron safe, because I had no iron safe, and I could not spare the money to buy one, and that I could not take the insurance if I had to comply with it; and he answered me that he would make it all right. I told him that I had no place to keep my books, except in the house. At the time we had this conversation, he knew that I was living in the building in which I did business. This conversation was about the 20th of October, 1909. The policy was not delivered at that date, but some time after that. Mr. McBride told me that my stock of goods was insured from the date of our first conversation—that the insurance would date from the date of the first conversation. I do not remember whether the policy was delivered to me in person or not. I do remember, though, that I did not have all of the money; but I paid him $10, and also spoke to him at the same time about the iron-safe clause. * * * I said: 'McBride, I do not want to pay this money if this iron-safe clause is going to hold. I have not got an iron safe, but keep my books and invoices in my desk in the store, and why should I pay my money for nothing?' And he said: 'That is all right, Mr. Brown. If you have a loss you will get your money.' * * * At the time I paid the first $10 it must have been 10 or 20 or 30 days after October 20th. I did not get the policy until I paid the last $10. Before the policy was delivered to me, I had no opportunity of inspecting it. The last $10 was paid 10 or 15 days after the first payment was made at my store. I do not re-

member that there was anything said at that time about the iron-safe clause. The policy, I believe, was delivered to my wife." McBride, appellant's agent, testified: "I am local agent for the defendant company, to solicit insurance, issue and deliver policies, and collect premiums for it. * * * He [Brown] paid me one-half of the premium at one time and the balance at another. Mr. Brown saw the policy before he paid the full amount of the premium. I do not suppose, however, that he read it. I did not give it to him and let him see it. I told Mr. Brown that he was insured from the date of the first conversation that I had with him."

It will be noted that according to the testimony of Brown, as quoted, the contract covering the insurance rested in parol during 10 to 30 days and that when he accepted the policy intended to reduce the contract to writing he was ignorant of the fact that the terms thereof as evidenced by the writing differed from the terms agreed upon. It was shown that McBride, as appellant's agent, was authorized to solicit insurance and issue and deliver policies and collect premiums due appellant on its contracts. It was not shown that at the time the contract was entered into Brown had any notice of any such limitation on McBride's authority as the policy afterwards issued provided for. Therefore, to our minds, the distinction between this case and the Mize Case is so marked as to forbid the conclusion reached by appellant that they are in conflict.

The motions are overruled.